**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

**MANAGAN JOHNSON** and **JOHNSON LAW** *
*
*Plaintiffs,*
v. * Case No: **1:24-cv-00316-BLW**

**TERRY GREENE** *

*Defendant* *
* * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES……………………………………………………………………….ii

I. INTRODUCTION………………………………………………………………………………1
II. BACKGROUND……………………………………………………………………………...1

A. Factual History………………………………………………………………………..1
B. Procedural History……………………………………………………………………….3

III. LEGAL STANDARDS…………………………………………………………………………..4

IV. ARGUMENT……………………………………………………………………………………..5

A. Mr. Greene's Admissions Conclusively Establish Material Facts……………………………….5

B. The Facts Conclusively Established Demonstrate Ms. Johnson's Entitlement to Judgment as a Matter of Law…………………………………………………………………………………6

1. Ms. Johnson is Entitled to Judgment as a Matter of Law that Mr. Greene's Statement that Ms. Johnson is/are "Lie-yawers" is Defamatory Per Se……………………………….6

a. Mr. Greene Communicated Information Regarding Ms. Johnson to Others…..…7

b. Mr. Greene's Communications Were Defamatory Per Se………………………..8

2. Ms. Johnson is Entitled to Judgment as a Matter of Law that Mr. Greene's Statement that Ms. Johnson is a thief is Defamatory Per Se……………………………………….11

a. Mr. Greene Communicated Information Concerning Ms. Johnson to Others….11

b. Mr. Greene's False Statements Were Defamatory Per Se……….……………..12

3. Ms. Johnson is Entitled to Judgment as a Matter of Law that Mr. Greene's Statement that Ms. Johnson is racist and/or prejudiced against minorities is Defamatory Per Se…………………………………………………………………………………14

c. Mr. Greene Communicated Information Concerning Ms. Johnson to Others….15

d. Mr. Greene's False Statements Were Defamatory Per Se……….……………..15

V. CONCLUSION……………………………………………………………………………...17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*U.S. SEC v. Cutting,*
No. 2:21-cv-00103-BLW, 2022 WL 4536816 (D. Idaho Sept. 28, 2022)..................4, 11, 14, 17

*Scofield v. Guillard,*
No. 3:22-cv-00521-REP, 2022 WL 2862295 (D. Idaho June 6, 2024)......................4, 11, 14, 17

*Zetwick v. County of Yolo*,
850 F.3d 436 (9th Cir. 2017)..........................................................................................4

*Ricci v. DeStefano*,
557 U.S. 557 (2009)..........................................................................................................4

*United States v. Kasuboski*
834 F.2d 1345, 1350 (7th Cir. 1987)................................................................................5

*999 v. C.I.T. Corp.*
776 F.2d 866, 869-70 (9th Cir. 1985)...............................................................................5

*Clark v. Spokesman-Rev.,*
144 Idaho 427, 163 P.3d 216 (Idaho 2007).....................................................................6

*Elliott v. Murdock,*
161 Idaho 427, 163 P.3d 216 (Idaho 2016).....................................................................6

*Yoakum v. Hartford Fire Ins. Co.,*
129 Idaho 171, 923 P.2d 416 (Idaho 1996)...................................................6, 8, 12, 14

*Siercke v. Siercke,*
167 Idaho 709, 476 P.3d 376 (Idaho 2020)...............................................................6, 7

*Irish v. Hall,*
163 Idaho 603, 416 P.3d 975 (Idaho 2018), *abrogated on other grounds by*
*Siercke*, 167 Idaho, 476 P.3d……………………………………………………………7, 11

*Oja v. U.S. Army Corps of Eng'rs,*
440 F.3d 1122 (9th Cir. 2006)..........................................................................................7

*Barlow v. Int'l Harvester Co.,*
95 Idaho 881, 522 P.2d 1102 (Idaho 1974), *abrogated on other grounds by*
*Siercke*, 167 Idaho, 476 P.3d……………………………………………………………8, 11

*Cianci v. New Times Publishing Co.,*
639 F.2d 54, 64 (CA2 1980)....10

*Milkovick v. Lorain Journal Co.,*
497 U.S. 1, 27 (1990)....10

*Gough v. Tribune-Journal Co.,*
75 Idaho 502, 508, 275 P.2d 663, 666 (1954)....12

**Rules**

Fed. R. Civ. P. 56(a)....4, 10, 14, 16

Fed. R. Civ. P. 36....5

Fed. R. Civ. P. 36(b)....5, 9

Fed. R. Civ. P. 36(a)(3)....7

Maryland Attorneys' Rules of Professional Conduct Rule 19-301.5(d)....8, 13

Maryland Attorneys' Rules of Professional Conduct Rule 19-303.3(a)....9

Maryland Attorneys' Rules of Professional Conduct Rule 19-308.4(e)....16

**Other Authorities**

Restatement (Second) Torts § 570....6, 8, 16

"When Is it OK for a Lawyer to Lie?", American Bar Association, December, 2018, https://www.americanbar.org/news/abanews/publications/youraba/2018/december-2018/when-is-it-okay-for-a-lawyer-to-lie--/#:~:text=Everyone%20knows%20that%20lawyers%20are,and%20integrity%20become%20less%20clear....9

Restatement (Second) Torts § 566, comment a (1977)....10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| **MANAGAN JOHNSON** and **JOHNSON LAW** | * | |
| | * | |
| *Plaintiffs,* v. | * | Case No: **1:24-cv-00316-BLW** |
| **TERRY GREENE** | * | |
| *Defendant* | * | |

* * * * * * * * * * * * * * * * * * * * * *

## I. INTRODUCTION

Plaintiffs, Managan Johnson and Johnson Law (hereinafter referred to collectively as "Ms. Johnson") respectfully request that the Court enter partial summary judgment on her claim of defamation *per se* against Defendant, Terry Greene ("Mr. Greene"). As a matter of law, and as a consequence of his sworn admissions under the Federal Rules of Civil Procedure, Mr. Greene has admitted to defaming Ms. Johnson. Mr. Greene's admissions establish beyond dispute that Mr. Greene is liable for his defamation *per se* of Ms. Johnson. A jury shall determine the extent of Ms. Johnson's damages.

## II. BACKGROUND

### A. Factual History.

On or about February 23, 2024, Mr. Greene contacted Ms. Johnson seeking a family law attorney to represent his daughter-in-law, Maggie Xu Greene ("Maggie") in a divorce action against Defendant's son, Dustin Greene ("Dustin"). On or about March 2, 2024, Maggie hired Ms. Johnson to represent her in said divorce action. Ms. Johnson filed a Complaint for Absolute Divorce in Queen Anne's County Circuit Court on behalf of Maggie on March 18, 2024. Ex. 12. Dustin was served with said Complaint by the Queen Anne's County Sheriff's office four (4)

days later, on March 22, 2024. Ex. 13. After being served with Maggie's Complaint for Absolute Divorce, Dustin quit his job and his whereabouts became unknown. Ms. Johnson continued to represent Maggie, filing, *inter alia*: subpoenas duces tecum for Dustin's financial and work records; a long form financial statement required by law; and a Motion for an Expedited *Pendente Lite* Hearing. Ex. 19. Maggie's request for an Expedited *Pendente Lite* Hearing was denied by the Queen Anne's County Circuit Court, State of Maryland. Ex. 19. As a result of Dustin's disappearance, Maggie asked Ms. Johnson to speak to her father-in-law about how her case might proceed. At the direction of and with the permission of her then-client, Maggie, Ms. Johnson phoned Mr. Greene to discuss the litigation plan. Following the phone call with Mr. Greene, Ms. Johnson phoned Maggie to review the conversation Ms. Johnson had with Mr. Greene. After the phone conversations with Maggie and Mr. Greene, everyone was on board with the litigation plan that had been discussed, which included Ms. Johnson formally terminating her representation of Maggie. Six days later, on June 5, 2024, Ms. Johnson sent her standard, boilerplate "5 day letter" to Maggie, in connection with the plan for Ms. Johnson to formally withdraw her appearance in Maggie's divorce case. The "5 day letter" was sent to Maggie in accordance with Maryland law. Md. Rule 2-132(b). On or about this same date, June 5, 2024, Mr. Greene, inexplicably went on an online tirade, leaving a false, libelous, and defamatory Google Review for Ms. Johnson, containing calculated falsehoods, accusing Ms. Johnson, *inter alia*, of being: a liar, a thief, and a racist. Mr. Greene's review of Ms. Johnson stated:

> Over priced when it gets tough she quit. Get someone else! Charged over 10 k no results. No divorce. Nothing but bills. Of course she documents everything so there is not much recourse except posting an accurate review of non performance here. Lie-yawers! Oh of course Manage Johnson will say we have no record! of you. I was just trying to help a daughter. She took total advantage of us. If

> required I can post her transmittal of resignation. If she wanted to do the right thing by a minority she would issue a complete refund!

According to Google, the subject Google Review was viewed by at least one hundred sixty (160) people. Ex. 20. Mr. Greene has admitted that at no time between his final phone conversation with Ms. Johnson and the posting of his defamatory Google Review did Mr. Greene contact Ms. Johnson to express his concerns or seek clarification on her actions or the previously discussed litigation plan. SOF at ¶28.

In a good faith effort to resolve this matter without litigation and to avoid further damage to Ms. Johnson's reputation and ability to support her family, Ms. Johnson sent a cease-and-desist letter to Mr. Greene through his then-counsel, Mr. Richard "Tug" Worst on June 27, 2024. SOF at ¶8. In a June 26, 2024 phone call, Mr. Worst informed Ms. Johnson that his client had no intention of removing the above defamatory Google Review, because Mr. Greene was "entitled to his opinion." SOF at ¶8. Mr. Greene's Google Review, *supra*, remained visible to the public at least until July 1, 2024, the date Ms. Johnson mailed her Complaint & Request for Injunctive Relief to be filed with this Honorable Court. Ex. 24.

Mr. Greene has admitted that he authored and published the foregoing Google Review on Johnson Law's business listing. SOF at ¶5. Mr. Greene has admitted that these statements are false. *See generally* Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ("SOF"). Mr. Greene has claimed that his false statements are based on his "opinion."

**B. Procedural History.**

Ms. Johnson mailed her Complaint & Request for Injunctive Relief on July 1, 2024, and it was filed by this Honorable Court on July 5, 2024. ECF 1. Mr. Greene refused to waive service (ECF 9), and was thus served by private process server on August 18, 2024. ECF 2. On September 9, 2024, Mr. Greene filed his Answer in the above captioned matter. ECF 7. On

October 31, 2024, this Honorable Court ordered Mr. Greene to pay Ms. Johnson the cost of service. ECF 14. The Court issued its Scheduling Order in this matter on November 18, 2024, following a telephone scheduling conference with both parties. ECF 18.

## III. LEGAL STANDARDS

Rule 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense - *or the part of each claim or defense* - on which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added). The emphasized portion of Rule 56(a) permits parties to move for summary judgment on liability, while leaving the amount of damages for trial. See *U.S. SEC v. Cutting*, no. 2:21-cv-00102-BLW, 2022 WL 4536816. (D. Idaho Sept. 28, 2022) (Granting a "Motion for Summary Judgment on Liability"). See also *Scofield v. Guillard,* no. 3:22-cv-00521-REP, 2024 WL 2862295, granting Plaintiff's Motion for Partial Summary Judgment on the first two elements of her Idaho defamation claim, namely: that the Defendant (i) communicated information concerning the plaintiff to others and (ii) that the information was defamatory. "The standard for summary judgment is familiar: Summary Judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact." *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (internal citation omitted); Fed R. Civ. P. 56(a). ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial,' and summary judgment is appropriate." *Zetwick*, 850 F.3d at 441 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

## IV. ARGUMENT

### A. Mr. Greene's Admissions Conclusively Establish Material Facts.

"Admissions made under [Federal Rule of Civil Procure] 36, even default admissions, can serve as the factual predicate for a summary judgment." *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987). Indeed, because "[e]vidence inconsistent with a Rule 36 admission is properly excluded," summary judgment may be granted solely based on Rule 36 admissions even where other evidence might contradict those admissions. *999 v. C.I.T. Corp.*, 776 F.2d 866, 869-70 (9th Cir. 1985). The effect of an admission under Rule 36 is clear: "A matter admitted under this rule is **conclusively established**. . .." Fed. R. Civ. P. 36(b) (emphasis added).

The following facts have been conclusively established by Mr. Greene's admissions and other evidence:

1. Mr. Greene authored and published the Google Review which forms the basis of this lawsuit. SOF at ¶5.

2. Maggie did not pay Ms. Johnson "over 10k." SOF at ¶¶ 9 - 11.

3. Ms. Johnson is not permitted to accept legal fees contingent upon the securing of a divorce. Maryland Attorneys' Rules of Professional Conduct, Rule 19-301.5(d).

4. Ms. Johnson billed her legal services for Maggie at an hourly rate, which was documented by detailed trust account statements, copies of which were sent to Maggie multiple times throughout Ms. Johnson's representation of Maggie. SOF at ¶¶ 22 - 23.

5. Mr. Greene is unable to identify any lie(s) told by Ms. Johnson. SOF at ¶12.

6. Maggie is not Mr. Greene's daughter. Ex. 6 at RFAs 5 - 6.

7. Maggie, through her subsequent divorce counsel, has filed at least 181 pages of evidence obtained for her by Ms. Johnson. SOF at ¶26.

8. Mr. Greene admits he has no evidence or reason to believe that Ms. Johnson is prejudiced against minorities. SOF at ¶29.

**B. The Facts Conclusively Established by Mr. Greene's Admissions Demonstrate Ms. Johnson is Entitled to Judgment as a Matter of Law.**

"In a defamation action, a plaintiff must prove that the defendant: (1) communicated information concerning the plaintiff to others; (2) that the information was defamatory; and (3) that the plaintiff was damaged because of the communication." *Clark v. Spokesman-Rev.*, 144 Idaho 427, 430, 163 P.3d 216, 219 (Idaho 2007). "A defamatory statement is one that 'tends to harm a person's reputation, usually by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business.'" *Elliott v. Murdock*, 161 Idaho 281, 287, 385 P.3d 459, 465 (Idaho 2016) (brackets and citation omitted).

Moreover, a statement is defamatory *per se* if it ascribes to another "conduct, characteristics, or a condition incompatible with the proper exercise of [her] lawful business, trade, or profession, or office, as stated in § 573." Restatement of the Law, Torts § 570(c). *See Yoakum v. Hartford Fire Ins. Co.*, 129 Idaho 171, 180, 923 P.2d 416, 425 (Idaho 1996). "Statements that rise to the level of defamation *per se* do not require proving special damages." *Siercke v. Siercke*, 167 Idaho 709, 718, 476 P.3d 376, 385 (Idaho 2020). Whether a statement is defamatory *per se* is a question of law for the court. *Id.*

**1. Ms. Johnson is Entitled to Judgment as a Matter of Law that Mr. Greene's Statement that Ms. Johnson is/are "Lie-yawers" is Defamatory Per Se.**

Mr. Greene's Google Review refers to Plaintiffs as "Lie-yawers," i.e. liars. Such a statement constitutes a communication as a matter of law, and because Mr. Greene's statement imputes conduct and characteristics that would adversely affect Ms. Johnson's fitness for the proper conduct of her lawful profession, practicing law, said statement constitutes defamation *per se* under Idaho law. *Yoakum*, 129 Idaho at 180, 923 P.2d at 425. Accordingly, Ms. Johnson is

entitled to summary judgment as a matter of law regarding this statement authored and published by Mr. Greene.

**a. Mr. Greene Communicated Information Regarding Ms. Johnson to Others.**

Mr. Greene has admitted that he authored and published the Google Review, quoted on pages 2-3 of this memorandum. SOF at ¶5. This admission conclusively establishes that Mr. Greene "communicated information concerning the plaintiff to others." *Siercke*, 167 Idaho at 718, 476 P.3d at 385; Fed. R. Civ. P. 36(a)(3). While few cases dwell on what it means to "communicate [] information concerning the plaintiff to others," *Siercke*, 167 Idaho at 718, 476 P.3d at 385, there is no doubt that Mr. Greene's posting of the Google Review to Ms. Johnson's Google Business Listing satisfies this element. "The element of publication [or communication] requires the defamatory statement be communicated to a person other than the person defamed." *Irish v. Hall*, 163 Idaho 603, 608, 416 P.3d 975, 980 (Idaho 2018), *abrogated on other grounds by Siercke*, 167 Idaho at 718-20, 476 P.3d at 385-87. "In both print and Internet publishing, information is generally considered 'published' when it is made available to the public." *Id.* quoting (*Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1131 (9th Cir. 2006)). Thus, "[o]nce information has been published on a website or print media, there is no further act required by the publisher to make the information available to the public." *Id.* (citation omitted).

According to Google, Mr. Greene's statements were viewed by at least one hundred sixty (160) people from the time it was posted on June 5, 2024 to the time it was no longer visible to the public on July 2, 2024. SOF at ¶27. When contacted via text message on June 18, 2024 about his defamatory review, Mr. Greene wrote, *inter alia*:

> My review was accurate... now I can post a screenshot that you intend to Sue me because you are unhappy with the review too. I can also post your resignation letter. **If you really want to go there, I can repost some un favorable reviews**

> **from yelp too if you'd like. How about you give her money back since you failed to complete a divorce, and then you resigned.**
> . . .
> Your other reviews support my review. **Good luck. Not everyone thinks you're great** and I didnt lie. Maggie is a nice person and cannot always speak for herself.
> Ex. 25 (Emphasis added.)

It appears from these comments that Mr. Greene believes Ms. Johnson was required to guarantee a Judgment of Divorce for Maggie. Maryland Attorneys' Rules of Professional Conduct, Rule 19-301.5(d) specifically provides:

> **(d)** An attorney shall not enter into an arrangement for, charge, or collect: (1) any fee in a domestic relations matter, the payment or amount of which is **contingent upon the securing of a divorce** or custody of a child or upon the amount of alimony or support or property settlement, or upon the amount of an award pursuant to Md. Code, Family Law Article, §§ 8-201 through 8-213. (Emphasis added.)

Ms. Johnson is prohibited under the cited rule from collecting legal fees in exchange for any particular result, such as "complet[ing] a divorce," i.e. obtaining a final Judgement of Divorce. Mr. Greene's demand that Ms. Johnson do so would be impossible for her to ethically fulfill.

**b. Mr. Greene's Communication Was Defamatory Per Se**.

Mr. Greene's statement that Plaintiffs are "Lie-yawers," i.e. liars, unambiguously imputes to Ms. Johnson conduct and characteristics "that would adversely affect [her] lawful business, trade, or profession." Restatement of the Law, Torts § 570. See also *Yoakum*, 129 Idaho at 180, 923 P.2d at 425. It cannot genuinely be disputed that an attorney's integrity and honesty are required for the proper conduct of the practice of law. It cannot genuinely be disputed that an attorney lying to or about her client and/or the court is "conduct . . . incompatible with the proper conduct of [the lawyer's] lawful business, trade, or profession." *Barlow v. Int'l Harvester Co.,* 95

Idaho 881, 890, 522 P.2d 1102, 1111 (Idaho 1974) (citation omitted). Indeed, the incompatibility of lying with the proper conduct of the practice of law is enshrined in the Maryland Attorneys' Rules of Professional Conduct, Rule 19-303.3 - Candor Toward the Tribunal (3.3)(a)[1], which states, in pertinent part:

> An attorney shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the attorney; (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client; (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the attorney to be directly adverse to the position of the client and not disclosed by an opposing attorney; or (4) offer evidence that the attorney knows to be false. If an attorney has offered material evidence and comes to know of its falsity, the attorney shall take reasonable remedial measures.

The American Bar Association sums this up with the obvious statement that, "Everyone knows that lawyers are not allowed to lie — to clients, courts or third parties."[2]

Mr. Greene has admitted that, "he does not have direct evidence that Plaintiffs acted dishonestly." SOF at ¶12. Accordingly, it is conclusively established that Mr. Greene's statement is not true. Fed. R. Civ. P. 36(b). Mr. Greene continued to defame Ms. Johnson in statements he made under oath during the conduct of this case, falsely and repeatedly stating in his sworn discovery responses that Ms. Johnson (1) never filed/initiated a divorce on behalf of Maggie; and (2) never served Maggie's divorce complaint on Dustin. SOF at ¶¶ 15 - 16. Mr. Greene also

---

[1] This rule is based on the American Bar Association's Model Rules of Professional Conduct, Rule 3.3. The Federal Bar Association has also published Rules of Professional Conduct based on the ABA's Model Rules of Professional Conduct. https://members.fedbar.org/eWeb/DynamicPage.aspx?Action=Add&site=FBA&ObjectKeyFrom=1A83491A-9853-4C87-86A4-F7D95601C2E2&WebCode=ProdDetailAdd&DoNotSave=yes&ParentObject=CentralizedOrderEntry&ParentDataObject=Invoice%20Detail&ivd_formkey=69202792-63d7-4ba2-bf4e-a0da41270555&ivd_cst_key=00000000-0000-0000-0000-000000000000&ivd_prc_prd_key=bda99ea4-fb6c-4a1a-ba92-5f26bcf9e073

[2] "When is it OK for a Lawyer to Lie?", American Bar Association, December, 2018, https://www.americanbar.org/news/abanews/publications/youraba/2018/december-2018/when-is-it-okay-for-a-lawyer-to-lie--/#:~:text=Everyone%20knows%20that%20lawyers%20are,and%20integrity%20become%20less%20clear.

falsely stated under oath that Maggie's divorce is "a now default divorce." SOF at ¶18. Mr. Greene later admitted that his statements made under oath were false. SOF at ¶¶ 17 and 19.

Mr. Greene attempts to hide behind the defense that his statements, including that Ms. Johnson is a "Lie-yawer," constitute "opinion," and cannot therefore be defamatory. However, our United States Supreme Court has rejected this exact argument and ruled that a defamer cannot use "opinion" as a defense when calling someone a liar. Specifically, the United States Supreme Court has ruled:

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar." As Judge Friendly aptly stated: "[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words, 'I think.'" See *Cianci v. New Times Publishing, Co., 639 F.2d 54, 64 (CA2 1980)*. It is worthy of note that at common law, even the privilege of fair comment did not extend to "a false statement of fact, whether it was expressly stated or implied from an expression of opinion." *Restatement (Second) of Torts, § 566, comment a (1977). Milkovick v. Lorain Journal Co.*, 497 U.S. 1, 27, 110 S. Ct. 2695, 2705-6.

As stated earlier, Mr. Greene has admitted that, "he does not have direct evidence that Plaintiffs acted dishonestly." SOF at ¶12. Ms. Johnson, on the other hand, has demonstrated numerous instances in which Mr. Greene has acted dishonestly, including telling repeated falsehoods under oath in the above captioned proceedings pending before this Honorable Court. SOF at ¶¶ 15 - 19 Mr. Greene has thereby thoroughly destroyed his own credibility and demonstrated a total disregard for the truth and disrespect for the rule of law and the venerable proceedings before this Honorable Court.

Mr. Greene's admissions and the uncontroverted evidence in this case conclusively establish that Mr. Greene's statements impute to Ms. Johnson "conduct . . . incompatible with the proper conduct of [the lawyer's] lawful business, trade, or profession." *Barlow*, 95 Idaho at 890, 522 P.2d at 1111 (citation omitted). Accordingly, Mr. Greene's false statements concerning Ms. Johnson being a "Lie-yawer" are defamatory *per se* as a matter of law, and this Court should determine as a matter of law that Mr. Greene is liable to Ms. Johnson for this defamatory *per se* statement. Fed. R. Civ. P. 56(a) (permitting summary judgment on a "part of" a claim, like liability); *Cutting*, 2022 WL 4536816 and *Scofield*, 2024 WL 2862295 (granting a Motion for Summary Judgment on Liability for Defamation).

**2. Ms. Johnson is Entitled to Judgment as a Matter of Law on Mr. Greene's Statements that Ms. Johnson is a thief is Defamatory Per Se.**

Mr. Greene's admissions and document production establish as a matter of law that Ms. Johnson is entitled to judgment that Mr. Greene is liable to Ms. Johnson for defamation *per se* for stating that Ms. Johnson is a thief.

**a. Mr. Greene Communicated Information Concerning Ms. Johnson to Others.**

For the same reasons discussed above in reference to Part 1, Mr. Greene's Google Review statements, containing false assertions that Ms. Johnson accepted legal fees in exchange for "nothing," constitute communications concerning Ms. Johnson. See *supra* § IV. B.1.a. As a matter of law, therefore, Mr. Greene has admitted to the first element of the defamation *per se* claim asserted in Ms. Johnson's Complaint & Request for Injunctive Relief. *Irish*, 163 Idaho at 608, 416 P.3d at 980.

**b. Mr. Greene's Communication Was Defamatory Per Se.**

Throughout Mr. Greene's Google Review, he makes numerous statements that tell the reader that Ms. Johnson is a thief. These statements include the following elements:

1. "Charged over 10 k no results."
2. "Nothing but bills."
3. "non performance."
4. "She took total advantage of us."
5. "If she wanted to do the right thing . . . she would issue a complete refund!"

"In determining the defamatory character of a publication the article must be read and construed as a whole; the words used are to be given their common and usually accepted meaning and are to be read and interpreted as they would be read and understood by the persons to whom they are published." *Gough v. Tribune-Journal Co.*, 75 Idaho 502, 508, 275 P.2d 663, 666. (Internal citations omitted.) All of Mr. Greene's statements, taken together, communicate that Ms. Johnson accepted monies in exchange for "nothing," and produced no valuable legal services, only "bills," thereby taking "advantage" of her client and her client's family. All of these statements, taken together, communicate to the reader that Ms. Johnson stole "over 10 k" during her representation of a client. Mr. Greene has admitted that his statement that Ms. Johnson charged Maggie "over 10 k," i.e. over $10,000.00, is false. SOF at ¶¶ 9 - 10. Mr. Greene produced copies of Ms. Johnson's itemized trust account statements he received via emails from Maggie in March and May of 2024. SOF at ¶¶ 22 - 23. Maggie's final trust account statement shows that: of the $9,106.33 remitted by Maggie to Ms. Johnson, only $7,595.00 were applied to Ms. Johnson's legal fees; $471.81 were paid for filing fees, court costs and service fees; $875.00 worth of legal services were rendered for free by Ms. Johnson to Maggie; and $1,039.52 was

refunded to Maggie at the close of Ms. Johnson's representation. Ex. 28. SOF at ¶11. The uncontroverted evidence shows that (a) Maggie was provided multiple copies of her trust account statement as the case progressed; (b) Mr. Greene received at least two separate copies of Maggie's trust account statements in March and May of 2024; and (c) Maggie continued to employ Ms. Johnson following receipt of itemized trust account statements. Ex. 28. SOF at ¶¶ 22 - 23. Mr. Greene admits that he was never a client of Ms. Johnson and that he never contacted Ms. Johnson to question her billing practices or legal fees prior to publicly attacking her in his June 5, 2024 defamatory Google Review. SOF at ¶7. Furthermore, Maggie's continued employment of Ms. Johnson, after having multiple opportunities to review Ms. Johnson's retainer agreement, charges, and billing practices, demonstrates Maggie's agreement with said practices and desire for Ms. Johnson's continued representation.

Maggie's own behavior in her ongoing divorce demonstrates that she did not pay for "no results," "nothing but bills," and/or "non performance." Maggie's subsequent divorce counsel filed at least 181 pages of evidence obtained for Maggie by Ms. Johnson during her representation of Maggie. SOF at ¶26. If Ms. Johnson's legal services were worthless, as Mr. Greene writes in his Google Review, then Ms. Johnson could not produce numerous public record pleadings and filings she prepared on Maggie's behalf. Ex. 19. Additionally, Maggie would not now be using at least 181 pages of evidence obtained for her by Ms. Johnson. Ex. 21.

It is not genuinely disputed that Ms. Johnson is prohibited by Maryland Attorneys' Rules of Professional Conduct Rule 19-301.5 from charging or collecting monies in a domestic relations matter, the payment of which is contingent upon the securing of a divorce,[3] i.e. the

[3] Maryland Attorneys' Rules of Professional Conduct, Rule 19-301.5(d) specifically provides: **(d)** An attorney shall not enter into an arrangement for, charge, or collect: (1) any fee in a domestic relations matter, the payment or amount of which is **contingent upon the securing of a divorce or custody of a child or upon the amount of alimony or support** or property settlement, or upon the amount of an award pursuant to Md. Code, Family Law Article, §§ 8-201 through 8-213. (Emphasis added.)

"results" Mr. Greene was referencing when he stated, "no results. No divorce," in his defamatory Google Review.

Furthermore, it cannot genuinely be disputed that an attorney cannot accept legal fees in exchange for "nothing." Mr. Greene's statements, therefore, impute conduct and characteristics "that would adversely affect [Ms. Johnson's] lawful business, trade, or profession." Restatement of the Law, Torts § 570. See also *Yoakum*, 129 Idaho at 180, 923 P.2d at 425. Maggie's trust account statement (Ex. 28), the pleadings filed for her by Ms. Johnson (Ex. 19), and the filings in her ongoing divorce (Ex. 21) demonstrate that Maggie paid monies in exchange for valuable legal services, the products of which are currently being used for Maggie's benefit by her new counsel of record in Maggie's ongoing divorce. SOF at ¶¶ 23 - 23, 26.

Finally, stating that someone stole over $10,000.00 is not an opinion, it is a statement of fact. In this case, it is a false and defamatory statement of fact. Accordingly, Mr. Greene's false statements concerning Ms. Johnson being a thief, i.e. accepting legal fees in exchange for "nothing," are defamatory *per se* as a matter of law, and this Court should determine as a matter of law that Mr. Greene is liable to Ms. Johnson for these defamatory *per se* statements. Fed. R. Civ. P. 56(a) (permitting summary judgment on a "part of" a claim, like liability); *Cutting*, 2022 WL 4536816 (granting a Motion for Summary Judgment on Liability). *Scofield*, 2024 WL 2862295 at *33 (granting a Motion for Partial Summary Judgment on Liability for Defamation).

**3. Ms. Johnson is Entitled to Judgment as a Matter of Law on Mr. Greene's Statements that Ms. Johnson is racist and/or prejudiced against minorities is Defamatory Per Se.**

Mr. Greene's Google Review, when read as a whole, establishes as a matter of law that Ms. Johnson is entitled to judgment that Mr. Greene is liable to Ms. Johnson for defamation *per se* for communicating that Ms. Johnson is racist and/or prejudiced against minorities.

**a. Mr. Greene Communicated Information Regarding Ms. Johnson to Others**.

For the same reasons discussed above in reference to Part 1, Mr. Greene's admission that he authored and published the subject Google Review containing false assertions that Ms. Johnson is prejudiced against and/or "takes advantage" of minorities constitutes a communication concerning Ms. Johnson. See *supra* § IV. B.1.a. As a matter of law, therefore, Mr. Greene has admitted to the first element of the defamation *per se* claim asserted in Ms. Johnson's Complaint & Request for Injunctive Relief.

**b. Mr. Greene's Communication Was Defamatory Per Se.**

Mr. Greene stated, "If [Managan Johnson] wanted to do the right thing by a minority she would issue a complete refund!" This statement, when read within the context of the entire Google Review, communicates that Ms. Johnson is racist and/or prejudiced against minorities. The Google Review communicates to the reader that Ms. Johnson "takes advantage" of minorities by charging them "over 10K" for "Nothing but bills," "no results," and "non-performance."

It's clear from the text messages produced by Mr. Greene, that both Mr. Greene and Maggie's primary preoccupation is with money, not justice or the truth. Ex. 17. Mr. Greene was blatantly seeking to strongarm Ms. Johnson into issuing "a complete refund," in an effort to force Ms. Johnson to work for free by viciously and falsely attacking her public reputation and livelihood. Mr. Greene's statement is false and defamatory *per se*. He couldn't have cared less about the real life impact on Ms. Johnson's livelihood, reputation, and mental health. He couldn't have cared less about the humanity of Ms. Johnson, her husband, or her children, all of whom suffered and were adversely impacted by the callous, hideous, and reckless attack by Mr. Greene.

Mr. Greene's statements impute conduct and characteristics "that would adversely affect [Ms. Johnson's] lawful business, trade, or profession." Restatement of the Law, Torts § 570. See also *Yoakum*, 129 Idaho at 180, 923 P.2d at 425. It cannot genuinely be disputed that an attorney cannot discriminate against and/or "take advantage" of a client based on the client's race, national origin, or status as a minority. Indeed, the incompatibility of such prejudice by an attorney is enshrined in Maryland Attorneys' Rules of Professional Conduct, Rule Rule 19-308.4(e), which states:

> It is professional misconduct for an attorney to:
> (e) knowingly manifest by words or conduct when acting in a professional capacity bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status when such action is prejudicial to the administration of justice, provided, however, that legitimate advocacy is not a violation of this section;

Mr. Greene admits that he has never met Managan Johnson. SOF at ¶6. Mr. Greene can produce no evidence nor objectively verifiable facts demonstrating that Ms. Johnson is racist or prejudiced against minorities in any way, shape or form. Mr. Greene has admitted that he has no evidence or reason to believe that Ms. Johnson is prejudiced against minorities. SOF at ¶29. This particular aspect of Mr. Greene's defamation of Ms. Johnson may be the most horrible and insidious of all of his false statements. Ms. Johnson does not hold such prejudices and does not treat clients differently based on any of the categories outlined in Maryland Attorneys' Rules of Professional Conduct, Rule 19-308.4(e), above. Ms. Johnson has represented with dedication and kindness clients from all walks of life, including diverse minorities.

Accordingly, Mr. Greene's false statements concerning Ms. Johnson's alleged prejudice against and/or mistreatment of minorities are defamatory *per se* as a matter of law, and this Court should determine as a matter of law that Mr. Greene is liable to Ms. Johnson for this defamatory *per se* statement. Fed. R. Civ. P. 56(a) (permitting summary judgment on a "part of" a claim, like

liability); *Cutting*, 2022 WL 4536816 (granting a Motion for Summary Judgment on Liability"). *Scofield*, 2024 WL 2862295 at *33 (granting a Motion for Partial Summary Judgment on Liability for Defamation).

## V. CONCLUSION

For the reasons stated herein, Ms. Johnson respectfully requests that the Court grant Plaintiffs' Motion for Partial Summary Judgment and hold Mr. Greene liable for his defamatory *per se* statements as a matter of law. The evidence conclusively establishes that Mr. Greene's statements defamed Ms. Johnson; the jury will determine the amount of Ms. Johnson's damages.

Respectfully Submitted,

*/s/ Managan L. Johnson*
**MANAGAN L. JOHNSON**
**PRO SE LITIGANT**
1910 Towne Centre Blvd., Suite 250
Annapolis, MD 21401
Telephone: (443) 333-9496
Email: managan@johnsonlawmd.com

## CERTIFICATE OF SERVICE

I hereby certify that on **January 22, 2025**, I served a copy of the foregoing via the CM/ECF on Defendant, **TERRY GREENE**, through his counsel of record as follows:

Robby J. Perucca, ISB No. 7001
ANDERSON, JULIAN & HULL LLP
C.W. Moore Plaza
250 South Fifth Street, Suite 700
Post Office Box 7426
Boise, Idaho 83707-7426
Telephone: (208) 344-5800
Facsimile: (208) 344-5510
E-Mail: rperucca@ajhlaw.com
iCourt/e-File: service@ajhlaw.com

*/s/ Managan L. Johnson*
**Managan L. Johnson**