UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MANAGAN JOHNSON and JOHNSON LAW,<br><br>      Plaintiffs,<br><br>      v.<br><br>TERRY GREENE,<br><br>      Defendant. | Case No. 1:24-cv-00316-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Plaintiff Managan Johnson and Johnson Law's Motion for Partial Summary Judgment (Dkt. 19) and Defendant Terry Greene's Cross Motion for Summary Judgment (Dkt. 22). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented, and that oral argument would not significantly aid its decision-making process, and it decides the motions on the record. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons discussed below, the Court denies Plaintiffs' motion and grants Defendant's motion.

## I.    BACKGROUND

Based on a review of the record, the Court finds the following facts are undisputed:

**MEMORANDUM DECISION AND ORDER - 1**

Plaintiff Managan Johnson is an attorney and is the sole proprietor of Johnson Law (hereinafter "Johnson") (Dkt. 19-2 at ¶ 1; Dkt. 22-2 at ¶ 1). On or about February 23, 2024, Defendant Terry Greene arranged for Johnson to represent his daughter-in-law, Maggie Xu Greene ("Maggie"), in divorce proceedings against Greene's son, Dustin Greene (Dkt. 19-3 at 6; Dkt. 22-2 at ¶ 4). Between February and March, Greene provided Maggie with $10,000 to pay for Johnson's legal services (Dkt. 22-2 at ¶ 7; Dkt. 22-4 at 71). Maggie deposited $9,106.33 into Johnson's trust account using funds from Greene (Dkt. 22-2 at ¶ 8; Dkt. 19-2 at ¶ 11). Maggie and Greene's text messages suggest that as the divorce proceeding continued, Maggie grew anxious regarding her divorce and personal finances and frequently contacted Johnson for updates on the divorce (Dkt. 19-12; *see, e.g.*, Dkt. 22-4 at 37) (Johnson responding to Maggie's messages by stating, "I am very concerned about how much pressure you're putting on my [sic] to hurry your divorce process . . . . If you continue to panic like this, I won't be able to continue representing you.").

By April, the parties became aware that Dustin had quit his job and disappeared, which complicated Maggie's divorce proceeding (Dkt. 19-3 at 6; Dkt. 22-2 at ¶ 10). In late May, Greene joined a phone conference with Johnson and Maggie to discuss the divorce (Dkt. 19-3 at 6; Dkt. 22-2 at ¶¶ 11-12).[1] By June 5, Johnson sent Maggie a letter explaining her intent to withdraw from representing Maggie (Dkt. 19-14 at 44; Dkt. 22-2 at ¶ 13). The same day, Greene posted the following review on the Google Business Listing for Johnson Law:

---

[1]    Greene disputes Johnson's assertion that she provided any prior notice of her intention to withdraw from representing her (Dkt. 22-2 at 3, ¶ 5). Since neither party relies on this fact as a material fact, the Court does not address it.

> Over priced when it gets tough she quit. Get someone else! Charged over 10 k no
> results. No divorce. Nothing but bills. Of course she documents everything so there
> is not much recourse except posting an accurate review of non performance here.
> Lie-yawers! Oh of course Manage Johnson will say we have no record! of you. I
> was just trying to help a daughter. She took total advantage of us. If required I can
> post her transmittal of resignation. If she wanted to do the right thing by a minority
> she would issue a complete refund!

(Dkt. 19-1 at ¶ 14; Dkt. 22-2 at ¶ 15; Dkt. 22-4 at 102). On June 10, Johnson texted Maggie, "Your

father in law just left a nasty review of me on Google." (Dkt. 22-4 at 61). By June 27, Johnson

shared a cease and desist letter to Richard John "Tug" Worst, who Johnson believed to be

representing Terry Greene (Dkt. 19-2 at ¶ 8; Dkt. 22-4 at 106). Johnson's letter stated Greene's

review of Johnson was "libel per se"; it contained "calculated falsehoods"; and Greene's damages

to her would continue to increase so long as the review remained published (*id.*). Johnson

demanded Greene take down his review immediately, cease from issuing further reviews, and issue

an apology to Johnson, her husband, her children, and her law firm (*id.*). While the parties dispute

the exact date when Greene removed the Google Review, they agree the removal occurred between

June 28 and July 1 (Dkt. 19-3 at 7; Dkt. 22-2 at ¶ 4). On July 1, the state court granted Johnson's

motion to withdraw from representing Maggie (Dkt. 19-14 at 48). The same day, Johnson returned

$1,039.52 to Maggie (Dkt. 19-2 at ¶ 11; Dkt. 22-2 at ¶ 18).

Sometime around July 1, Johnson mailed her instant complaint to this Court (Dkt. 1).

Johnson appears as a pro se litigant (*id.*). She details the factual allegations supporting her claim

for defamation, although her complaint does not contain a separate list of claims or counts (*id.*).

Johnson now moves for partial summary judgment, to which Greene responded with a cross-

motion for summary judgment (Dkt. 19; Dkt. 22).

MEMORANDUM DECISION AND ORDER - 3

## II.    LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the court must "view[ ] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence on which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor." *Id.* (citation omitted).

The trial court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather, the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

Where parties file cross-motions for summary judgment on the same issue, the court must consider both motions and all evidence submitted by both parties. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Each motion must be considered on its own merits. *Id.* A court must also be "mindful of the shifting burden of proof" where both

parties move for summary judgment. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Where the non-moving party has the burden of proof, the moving party need only prove there is "an absence of evidence to support the non-moving party's case." *Id.*; *see also Abdulhussain v. MV Pub. Transportation Inc*., No. CV-22-01458-PHX-SMB, 2025 WL 2257513, at \*3 (D. Ariz. Aug. 7, 2025) (citing *Celotex Corp.*, 477 U.S. at 322-23) ("The party without the burden of persuasion at trial . . . is entitled to summary judgment where it establishes that the party with the burden of persuasion will be unable to prove at least one element of its claim in light of the undisputed facts."). If the moving party meets that burden, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Oracle*, 627 F.3d at 387. The non-movant must then come forward with evidence that a jury could consider as supporting a verdict in the non-moving party's favor. *Id.* Otherwise, the Court will grant summary judgment in the movant's favor.

## III.    ANALYSIS

### A.    Johnson's Summary Judgment Motion for Defamation *Per Se* Claims

The substantive law of Idaho controls a defamation claim in a diversity action. *T. Dorfman, Inc. v. Melaleuca, Inc*., No. 4:12-CV-00134-EJL, 2013 WL 5676808, at \*4 (D. Idaho Oct. 18, 2013). Under Idaho law, a plaintiff alleging defamation must prove that the defendant: (1) communicated information concerning the plaintiff to others; (2) the information was defamatory; and (3) the plaintiff was damaged because of the communication. *Clark v. The Spokesman-Review*, 163 P.3d 216, 219 (Idaho 2007). While a traditional defamation action requires some allegation of damage, a plaintiff may proceed without proof of special damages in an action for defamation per se. *Blaine Larsen Processing, Inc. v. Hapco Farms*, Inc., No. CIV.97-

0212 E BLW, 2000 WL 35539979, at *5 (D. Idaho Aug. 9, 2000) (citing *Barlow v. Int'l Harvester, Inc.*, 522 P.2d 1102, 1117 (Idaho 1974)).

A statement is defamatory per se if it imputes to the plaintiff (1) "a criminal offense," (2) "a loathsome disease," (3) "a matter incompatible with his trade, business, profession, or office," or (4) "serious sexual misconduct." *Sadid v. Vailas*, 943 F. Supp. 2d 1125, 1134 (D. Idaho 2013) (citing *Yoakum v. Hartford Fire Ins. Co*., 923 P.2d 416, 425 (Idaho 1996)). Even where an allegation falls within one or more of these categories, a court must still determine whether the alleged statement allows for the presumption of damages without specific proof therefor. *Id.* Mainly, the Court considers if the statements are "plain and unambiguous." *Id.* If the alleged statements use language that is "not plain and unambiguous," then "whether the statements are per se defamatory is a factual question for the jury." *Sadid*, 943 F. Supp. 2d at 1135 (citing *Weeks v. M P Publ'ns*, 516 P.2d 193, 195 (Idaho 1973)). The statement "must be read and considered as a whole in the plain and natural meaning of the words used, and as a person of ordinary intelligence and perception would understand" the statement. *Gough v. Trib.-J. Co*., 249 P.2d 192, 178 (Idaho 1952) (citations omitted).

Here, Johnson asserts that Greene communicated information regarding Johnson by authoring and publishing his Google Review (Dkt. 19-3 at 11). Greene does not dispute this fact. Additionally, Johnson contends Greene's statements relate to Johnson's "business, trade, or profession," which ostensibly falls under a per se category recognized under Idaho law (*id.* at 12-13). Again, Greene does not dispute that he posted the Google Review regarding Johnson and her law firm (*id.* at 11; Dkt. 19-2 at ¶ 5).

Johnson, however, abbreviates the defamation per se standard under Idaho law when she says "[w]hether a statement is defamatory per se is a question of law for the court." (Dkt. 19-3 at 10 (citing *Siercke v. Siercke*, 167 Idaho 709, 476 P.3d 376 (2020); (Dkt. 22-1 at 4) (explaining it is Johnson's burden to show Greene's statement "unambiguously conveys a defamatory meaning")). A claim for defamation per se may involve both a question of law and fact: if the statement is "plain and unambiguous," it is question of law; but if a statement is ambiguous, "it is a question of fact for the trier of fact." *Siercke*, 476 P.3d at 718-19. Thus, to succeed at summary judgment, Johnson must show Greene's statements were "plain and unambiguous" as to a person of ordinary intelligence. *See id.*

Johnson alleges Greene's Google Review is defamatory per se based on three main theories: Greene called her a "liar" (Dkt. 19-3 at 10), a "thief" (*id.* at 15), and a "racist" (*id.* at 18). For the reasons below, the Court finds Johnson has not met her burden of showing the statements plainly convey these meanings. Accordingly, the Court denies Johnson's motion for summary judgment on her claims for defamation per se.

### 1.    "Liar" Statement

Johnson argues that Greene's exclamation "Lie-yawers!" in his Google Review is defamatory per se because it "unambiguously imputes to Ms. Johnson conduct and characteristics" that affect her business as an attorney (Dkt. 19-3 at 12). Johnson focuses largely on the value of an attorney's integrity and honesty and her professional duty of candor as a lawyer (*id.* at 12-13) (citing Maryland Attorneys' Rules of Professional Conduct, Rule 19-303.3). Johnson later asserts that "Lie-yawers" is not "mere hyperbole," as Greene argues, because his statements are "entirely

susceptible of being read as literally true" (Dkt. 23 at 17-18). Johnson otherwise does explain how "Lie-yawers" conveys an unambiguous meaning to a "person of ordinary intelligence."

Here, Greene does not use the term "liar" but instead creates a new word and ends it with an exclamation—"Lie-yawers!" A made-up word has no definition, which leaves the reader to assign it meaning; as a result, it is unclear as to whether Greene is referring to Johnson individually or commenting on the trope that all lawyers are untrustworthy. Rather than say "Johnson is a lie-yawer," Greene pluralizes the term in a one-word sentence. Greene also exclaims ("!") the term, which a reader could interpret as exasperation, such as "crooks!" *See generally Lansing v. Carroll*, No. 11 CV 4153, 2015 WL 3962345 (N.D. Ill. June 29, 2015) (finding term "crooks" to be ambiguous and, thus, not actionable in defamation suit). Accordingly, the Court finds that Johnson has not met her burden of showing Greene's "Lie-yawers" comment is unambiguously calling Johnson a liar. *See Gough*, 249 P.2d at 195.

### 2.    "Thief" Statement

Johnson next argues that Mr. Greene's statements, taken together as a whole, communicate that Johnson accepted monies in exchange for "nothing," which casts her as a "thief" (Dkt. 19-3 at 15-16). She cites her ethical obligation to not make client payments "contingent on securing of a divorce," and that "it cannot genuinely be disputed that an attorney cannot accept legal fees in exchange for 'nothing'" (Dkt. 19-3 at 17-18). Greene responds by arguing that Johnson's "ethical obligations as an attorney" are not relevant to the plain meaning of Greene's statements (Dkt. 22-1 at 4).

Here, Greene's Google Review states that he was "Charged over 10K no results"; he received "Nothing but bills" in exchange for "non performance"; and that Johnson "took total

advantage of us" (Dkt. 19-1 at ¶ 14; Dkt. 22-2 at ¶ 15; Dkt. 22-4 at 102). While Johnson contends Greene's statement "communicate[s] to the reader that Ms. Johnson stole 'over 10 k,'" Greene never used the terms "steal," "thief," "rob," or "fraud" (Dkt. 19-3 at 16). Additionally, while Greene complains he got "Nothing but bills" and "Charged over 10 K no results," he further describes his disappointment that he got "No divorce" and wanted a "complete refund." Rather than interpret the remark as plainly calling Johnson a thief, a person of ordinary intelligence could view Greene's Google Review as simply an expectation that paying a divorce attorney would result in a divorce.

The Court acknowledges Johnson's arguments that she cannot condition payment upon securing a divorce (Dkt. 19-3 at 17-180 ("Ms. Johnson is prohibited by Maryland Attorneys' Rules of Professional Conduct Rule 19-301.5 from charging or collecting moneys in a domestic relations matter, the payment of which is contingent upon securing a divorce"). Regardless, the unreasonableness of Greene's expectations is distinct from their alleged falsity. Greene's online grievances do not state that Johnson guaranteed a divorce; they do not state Johnson conditioned payment upon securing a divorce; they do not state she violated any contract; and they do not contain "thievery" language, such as "steal" or "thief." Accordingly, the Court finds Johnson has not met her burden of showing Greene's statements plainly or unambiguously call Johnson a thief.

### 3.    "Racist" Statement

Greene's Google Review ends with him exclaiming, "If [Johnson] wanted to do the right thing by a minority she would issue a complete refund!" Johnson says that this statement, "when read within the context of the entire Google Review, communicates that Johnson is racist and/or prejudiced against minorities" (Dkt. 19-3 at 19). Johnson cites her ethical obligation as an attorney

to act without bias toward race (*id.* at 20), although she does not explain how this relates to a person of ordinary intelligence interpreting Greene's words.

Greene's Google Review references his "minority" status (or Maggie's perhaps) and requests a refund, suggesting it is "the right thing" (Dkt. 22-4 at 102) ("If she wanted to do the right thing by a minority she would issue a complete refund!"). Greene does not use the terms "race," "racist," or "bias," nor does he say Johnson discriminated against him or Maggie. Greene also does not state to which minority group (race, gender, religion, or sexual orientation) he or Maggie belongs. As a result, a person of ordinary intelligence would not be able to glean a clear meaning from Greene's remark about "do[ing] the right thing by a minority." Rather, a reader could interpret "do the right thing by a minority" as a more general statement than "racist." Accordingly, the Court finds Johnson has not met her burden of showing Greene's comments plainly and unambiguously called Johnson a racist.

## B.    Greene's Cross Summary Judgment Motion Regarding Truthfulness and Opinions

Greene's cross-motion for summary judgment asks the Court to rule in his favor because (1) his statements regarding Johnson's fees and performance were "substantially true," and (2) his statements regarding Johnson were his "subjective opinion," which is protected under the First Amendment (Dkt. 22-1 at 5, 10). Having reviewed the record, the Court finds summary judgment in favor of Greene is proper because Greene has shown Johnson has not satisfied the elements of her claims, and Johnson has not met her burden of showing triable issues exist.

### 1.    Public Concern

As a preliminary issue before addressing Greene's arguments regarding "truthfulness" and "opinion," the Court must consider whether his statements address matters of public concern.

While truth of a defamatory statement is a traditional defense, if the alleged defamation discusses matters of public concern, the plaintiff bears the burden of showing falsity. *Wiemer v. Rankin*, 790 P.2d 347, 351 (Idaho 1990) ("[When] the alleged defamation discusses a matter of public concern, the common law's rule on falsity—that the defendant must bear the burden of proving truth—must . . . fall . . . to a constitutional requirement that the plaintiff bear the burden of showing falsity . . . .") (cleaned up).[2] In these instances, a court will consider whether the defendant asserts an objective statement rather than an opinion protected under the First Amendment. *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990).

Greene cites *Unelko*, among other cases, for the proposition that customer reviews are "of general interest and [were] made available to the general public" (Dkt. 22-1 at 14). Greene also collects several out-of-state authorities, such as *Neuman*, to argue online product reviews have value to the public (*id.* at 13-15) (citing *Neumann v. Liles*, 369 P.3d 1117, 1123 (Or. 2016), *Puryear L. P.C. v. Fishback*, 939 N.W.2d 659 (Iowa Ct. App. 2019), and *Dadeikian v. Laveway*, 83 Misc. 3d 784, 798, 208 N.Y.S.3d 907, 919 (N.Y. Sup. Ct. 2024)). More broadly, he argues that treating product reviews as unprotected speech risks a "chilling effect" contrary to Supreme Court's

---

[2]    Idaho case law is unclear if truth is a defense that defendant has the burden to prove, or that falsity is an element of defamation that plaintiff has the burden to prove. *Scofield v. Guillard*, No. 3:22-CV-00521-REP, 2024 WL 2862295, at *7 (D. Idaho June 6, 2024) ("Idaho caselaw does not clearly resolve which party has the burden of proving falsity/truth. Is truth a defense that must be pleaded and proved by Defendant, or is falsity an element of Plaintiff's prima facie case that must be pleaded and proved by Plaintiff? There is support for both positions in the caselaw."). Regardless, for alleged defamatory statements on matters of public concern, the plaintiff has the burden of proving falsity. *Wiemer v. Rankin*, 790 P.2d 347, 351 (Idaho 1990).

treatment of speech on matters of public concern (*id.* at 14-15) (citing *Dun & Bradstreet, Inc. v. Greenmoss Builders*, 472 U.S. 749, 761 (1985)).

In response, Johnson argues Greene's statements are not privileged because Johnson is not a "public figure" and Maggie's divorce is not a "public issue" (Dkt. 23 at 6-8). Johnson contends that "even if Maggie's divorce were a 'public issue,' the United States Supreme Court has ruled . . . 'the fact that expression concerned a public issue did not by itself entitle [a] libel defendant to the constitutional protections of *New York Times*'" (*id.* at 8) (citing *Dun*, 472 U.S. 756). While Johnson acknowledges "opinion and truth are always worthy of protection," she asserts that extending protections to "keyboard warriors" like Greene is unnecessary because "legal protections against defamation have done nothing to 'chill' this activity" (*id.* at 8). She further argues that to the extent an attorney's behavior is a "public concern," the "the public's interest is protected by the disciplinary bodies [*i.e.*, state bar associations] present in all 50 states" (*id.* at 8-9).

Courts within the Ninth Circuit have routinely treated online business reviews as matters of public concern. *See, e.g.*, *Sea Green Partners LLC v. Gail*, 651 F. Supp. 3d 1221, 1225 (W.D. Wash. 2023) (applying three-part test from *Underwager v. Channel 9 Australia*, 69 F.3d 361 (9th Cir. 1995), in response to boat repair company's defamation case regarding negative online review); *In re Plan. & Dev. of Educ., Inc.*, No. 21-MC-80242-JCS, 2022 WL 228307, at *4 n.3 (N.D. Cal. Jan. 26, 2022) (referencing court's order to show cause on why plaintiff's action should be dismissed based on online reviews implicating matters of public concern protected under First Amendment); *Crittendon v. Muldrow*, No. 22-CV-09153-RS, 2023 WL 2743582, at *1 (N.D. Cal. Mar. 31, 2023) ("The Ninth Circuit . . . has found that 'statements warning consumers of fraudulent or deceptive business practices constitute a topic of widespread public interest, so long as they are

provided in the context of information helpful to consumers.'") (citations omitted), *appeal dismissed*, No. 23-15649, 2023 WL 11227446 (9th Cir. Aug. 3, 2023); *see also Neumann*, 369 P.3d at 1123-24 (addressing First Amendment protections of negative Google Review of dance studio). Courts outside the Ninth Circuit have adopted a similar approach. *See, e.g.*, *Mirza v. Amar*, 513 F. Supp. 3d 292, 300 (E.D.N.Y. 2021) ("Defendant's reviews of plaintiffs' public business qualify as commenting on a matter of legitimate public concern and render plaintiffs limited purpose public figures.").

Notwithstanding the Court's analysis of the truthfulness of Greene's statements, the Court finds Greene's Google Review addresses a matter of public concern because it is a business review shared for the public's benefit. Greene's statements need not address a public figure to fall within this classification. *Wiemer*, 790 P.2d at 351; *Verity v. USA Today*, 436 P.3d 653, 667 (Idaho 2019); *Steele v. Spokesman-Rev.*, 61 P.3d 606, 609 (2002). While the Court acknowledges Maggie's divorce is unlikely to relate to a matter of public concern, the subject of Greene's Google Review is broader than a divorce: it is a customer review for the public's benefit. *Unelko*, 912 F.2d at 366 (finding defendant's public statements regarding product's effectiveness involved "matters of public concern"). Accordingly, the Court finds that Johnson bears the burden of showing the falsity of Greene's statements. *Wiemer*, 790 P.2d at 351 (explaining burden of proving falsity shifts to plaintiff where matter touches on issue of public concern).[3]

---

[3]    The Court acknowledges that whether an expression concerned a public issue does not "*by itself*" protect a defendant's speech. *Dun & Bradstreet v. Greenmoss*, 472 U.S. 746, 756 (1985). Accordingly, the Court considers the "public issue" as the beginning of its analysis because it determines which party has the burden of proof at summary judgment.

MEMORANDUM DECISION AND ORDER - 13

### 2.    Truthfulness of Greene's Statement Regarding Cost of Johnson's Services

Statements "that cannot be proved false" or "[s]tatements of opinion" are not defamatory. *Mattinas v. Davis*, No. 1:23-CV-00137-AKB, 2023 WL 3819386, at *5 (D. Idaho June 5, 2023). An alleged defamatory statement need not be precise to be truthful. *Baker v. Burlington Northern, Inc.*, 587 P.2d 829, 831 (Idaho 1978) ("[I]t is not necessary for the defendant to prove the literal truth of his statement in every detail . . . ."). "Slight inaccuracies of expression are immaterial provided that the defamatory charge is true *in substance*." *Steele,* 61 P.3d at 610 (citing the Restatement (Second) of Torts § 581A, comment f (1977)). So long as the "substance, the gist, the sting of the allegedly libelous charge" is truthful, then "minor inaccuracies" do not turn an otherwise truthful statement into a false one. *Id.*

Here, Greene's Google Review relates to a matter of public concern, so Johnson has the burden of proving falsity of Greene's statements. *Wiemer*, 790 P.2d at 351; *see Verity*, 436 P.3d at 667 ("[T]he First Amendment requires that the plaintiff, whether public official, public figure, or private individual, prove the statements at issue to be false.") (citing *Steele*, 61 P.3d at 609). As the party cross-moving for summary judgment, Greene "need only prove that there is an absence of evidence" to support Johnson's claim. *In re Oracle Corp.*, 627 F.3d at 387. If Greene makes this showing, Johnson (as the party with the burden of proof) must show specific facts demonstrate the existence of genuine issues for trial. *Id.* If Johnson does not submit evidence from which a jury could reasonably render a verdict in her favor, the Court must grant summary judgment in Greene's favor. *Id.*

Greene's principal argument regarding "truthfulness" relates to his statement that Johnson "Charged 10 K" with "No results" (Dkt. 22-1 at 8). According to Greene, the "gist" of the review

is correct because while "the review is not precisely accurate in terms of the amount charged, it substantively conveys the course of events preceding the lawsuit." (Dkt. 22-1 at 6). Greene analyzes Johnson's billing entries to conclude his statement that Johnson charged "over 10 K" is essentially true (Dkt. 22-1 at 8). Greene asserts he paid Maggie $10,000 to retain Johnson; Maggie remitted $9,106.33 to Johnson; at the time of his Google Review, no refund had been issued; Johnson retained a substantial sum ($7,594.90); and Greene was unhappy that Maggie paid these fees without completing the divorce, "leaving the client with 'nothing but bills'" (*id.* at 9). Greene further argues that "over 50%" of the money he paid Johnson related to tasks which subsequent counsel had to re-do and that "only $725, or 9% of the fees paid" involved "the work of obtaining the documents subsequently used in the case" (*id.* at 9).

Johnson does not address Greene's characterization of the work she performed that subsequent counsel was able to use, although she disputes Greene's characterization that she was "overpriced" (Dkt. 23 at 8). Further, Johnson does not dispute that Greene gave Maggie $10,000 to retain Johnson's services (Dkt. 19-21 at 1-2). Johnson also notes that after Greene submitted his Google Review, Johnson refunded Maggie $1,039.52 (Dkt. 23 at 12) (citing Dkt. 19-23). Johnson emphasizes that the difference between Greene's reference to "10K" and Johnson's ultimate fee of $7,594 is "hardly a 'minor' one" (Dkt. 23 at 15-16). Neither party disputes Johnson collected $7,594 in legal fees or that, when Greene posted his Google Review, Maggie had remitted $9,106.33 to Johnson for her services (Dkt. 26 at 8-9).

The difference between Greene's payment of $10,000 to Maggie, versus Maggie's payment of $9,106.33 to Johnson, is imprecise. Imprecise descriptions, however, are not inherently untruthful. *See Steele*, 61 P.3d at 610. Here, Johnson does not explain how Greene's imprecise

word-choice, such as "charge" rather than "retain" or "remit," makes his statements inherently false; does not address Greene's payment of $10,000 to Maggie for securing Johnson's services; and does not explain how Greene's complaint of "no results" is an apparent reference to Greene's goal of securing Maggie's divorce. Greene paid Maggie to hire Johnson with the expectation that Maggie would complete her divorce. Whether or not his expectation of a finalized divorce was reasonable does not mean his statement "no results no divorce" is inherently false. Accordingly, the Court finds Johnson has not met her burden of showing triable factual issues regarding the falsity of "Charged 10K" with "no results."

### 3.    Greene's Statements as an Assertion of Objective Fact

A speaker cannot be sued for expressing his opinion (however unreasonable) of another person. *See Wiemer*, 790 P.2d at 352-53 (addressing the Second Circuit's First Amendment analysis in *Hotchner v. Castillo–Puche*, 551 F.2d 910, 913 (2d Cir. 1977)). Notwithstanding this protection, the First Amendment does not "create a wholesale defamation exemption for anything that might be labeled 'opinion.'" *Milkovich v. Lorain*, 497 U.S. 1, 18 (1990). First, a court must consider whether the statement is a matter of public concern. *Unelko*, 912 F.2d at 1056 (finding a speaker's views on plaintiff's product involved a matter of public concern). Next, the court considers whether "a reasonable factfinder could conclude that the statement "impl[ies] an assertion of objective fact." *Sadid*, 943 F. Supp. 2d at 1134 (D. Idaho 2013) (citing *Wiemer*, 790 P.2d at 352). Having already concluded Greene's statements address a matter of public concern, the Court considers whether Greene's statements assert objective facts.

A court looks to the "totality of circumstances" in which a defendant made a statement to determine if it "implies a factual assertion." *Underwager*, 69 F.3d at 366. First, a court looks at the

statement "in its broad context," which includes "the general tenor of the entire work, the subject of the statements, the setting, and the format of the work." *Id.* (citing *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1994), and *Unelko*, 912 F.2d at 1053). Second, the court considers the "specific context and content of the statements," which involves "analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation." *Id.* Finally, the court considers "whether the statement itself is sufficiently factual to be susceptible of being proved true or false." *Id.*

The Ninth Circuit has explained that, as a general matter, "statements about a lawyer's performance constitute 'subjective' statements.'" *Partington*, 56 F.3d at 1158 (internal citations omitted). While criticisms suggesting a "serious ethical breach or that a lawyer lacks the professional qualifications" warrant additional scrutiny, a client's subjective remarks about the attorney's overall performance are "incapable of being proved true or false." *See id.* at 1158 n.15. As a result, an "evaluation of a lawyer's performance" is not actionable. *Id.* at 1158.

Greene emphasizes that his opinions are privileged under the First Amendment. As the Ninth Circuit explained in *Unelko*, the threshold question in defamation suits is not whether a statement "might be labeled 'opinion,'" but whether a reasonable person would believe his statement asserts an "objective fact." 912 F.2d at 1053 (citing *Milkovich*, 497 U.S. 1). The Court therefore applies the Ninth Circuit's three-part "objective fact" test outlined above. For the reasons discussed below, the Court finds Johnson has not met her burden of showing triable issues of fact exist as to whether Greene asserts objective statements of fact.

a.    **Broad Context**

"[I]n the context of an online review of a business," courts have treated reviews about the quality of service as non-actionable opinions rather than factual statements. *Sea Green Partners LLC*, 651 F. Supp. 3d at 1225. Johnson argues that "any reader of Greene's Google Review would take his statements about Ms. Johnson being a liar and charging over $10,000.00 for 'no results' and 'nonperformance' literally" (Dkt. 23 at 17).

Greene's communication is an online business review. Consumers rely on forums such as Google Reviews to voice their opinions regarding the value of services or quality of work performed, but not every review is a fair or reasonable opinion. Johnson does not fully address the broader context of Greene's review, how the context suggests an assertion of fact rather than an opinion, or how her arguments implicate other First Amendment concerns regarding consumer speech.[4] To the extent she touches on these issues indirectly, she asserts Greene and other online reviewers face no real risk of chilled speech (Dkt. 23 at 8) ("Greene goes on to contend that holding online reviewers responsible for defamation might 'chill' keyboard warriors from writing online reviews . . . Living in a 'free country' doesn't mean you can do 'whatever you want.'"). Johnson submits no authority for these arguments. Accordingly, the Court finds Johnson has not shown triable issues exist as to the broad context of Greene's statements.

---

[4]    Johnson argues Greene's statements regarding "do[ing] right by a minority" should be "read within the context of the entire Google Review" (Dkt. 19-3 at 19). Besides referencing Greene's other grievances in his review, she does not explain the basis for her context argument.

### b.    Specific Context

In examining the specific context and content of a statement, we consider "the extent of the figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation." *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1032 (9th Cir. 2000) (citing *Underwager*, 69 F.3d at 366). Johnson contends Greene was fixated with securing a refund (Dkt. 19-3 at 19) ("Mr. Greene and Maggie's primary preoccupation is with money"), and that any reader would take Greene's statements as "literally true" (Dkt. 23 at 17). Otherwise, Johnson does not provide any substantive analysis regarding the specific context of the review, such as the specific words Greene used, the format of the review, his tone, and his word choice. (Dkt. 23 at 17).

Here, Greene's use of the term "Lie-yawers!" is figurative language. As the Court already addressed, "Lie-yawers" is not a real word. A reasonable person is unlikely to conclude the author's message is serious because it is plural, a wordplay, an obvious riff on the stereotype that lawyers are untrustworthy, and exclaimed. Greene's other comments likewise lack seriousness. Greene's various misspellings, grammar issues, disjointed sentences, and exclamation points convey an unprofessional tone. The inexplicable sentenced fragment "of you," coupled with other nonsensical statements, like "Lie-yawers!" make the review appear flippant. Accordingly, the Court finds Johnson has not shown triable issues exist as to the specific context of Greene's statements.

### c.    Sufficiently Factual Statement

"[S]tatements that cannot reasonably be interpreted as stating actual facts" are protected and, therefore, "cannot be the basis of a state-law defamation claim." *Weiner*, 210 F.3d at 1031. A

statement that appears to be an opinion will nevertheless be treated as an assertion of fact "if the speaker implies that he is privy to undisclosed facts" and implies he has "private, first-hand knowledge which substantiate[s] the assertions made." *Idaho State Bar v. Topp*, 925 P.2d 1113, 1116 (Idaho 1996) (citing *Wiemer*, 790 P.2d at 353).

While Greene's review is insulting, he does not explicitly call Johnson a "liar." Greene exclaims "Lie-yawers!," which is not a real word. Rather than convey a statement of fact, Greene's "Lie-yawers" remark appears as a figurative speech. Greene's related statements, which address his view of how Maggie was treated and his opinion on the quality of Johnson's work, do not suggest the "Lie-yawers" remark is a factual assertion.

Greene's remaining comments—"no results," "No Divorce. Nothing but bills," "Non Performance," and "Overpriced"—relate to his views of Johnson's performance and the value of her services. While Johnson submits that Greene's statements are indeed objective factual assertions (Dkt. 23 at 16-17), she does provide a meaningful textual analysis that Greene's objectively calls her a "thief" or "racist." Greene's comments relate largely to his evaluation of Johnson's performance and value, which are incapable of being proven true or false. *Partington*, 56 F.3d at 1158 ("[W]e decline to chill [defendant's] right to express his opinion regarding what constituted good and bad trial strategy. . . an evaluation of a lawyer's performance in a specific trial is not actionable."). Accordingly, the Court finds Johnson has not met her burden of showing triable issues of fact exist as to whether Greene's Google Review contains sufficiently factual statements.

## IV.    ORDER

**IT IS ORDERED that:**

1.    Plaintiff Managan Johnson's Motion for Partial Summary Judgment (Dkt. 19) is **DENIED**.

2.    Defendant Terry Greene's Cross Motion for Summary Judgment (Dkt. 22) is **GRANTED**.

3.    Accordingly, the Court dismisses this case in entirety with prejudice, and a separate judgment shall issue.

DATED: September 02, 2025

Amanda K. Brailsford
U.S. District Court Judge