UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MANAGAN JOHNSON and JOHNSON LAW,<br><br>      Plaintiffs,<br><br>v.<br><br>TERRY GREENE,<br><br>      Defendant. | Case No: 1:24-cv-00316-AKB<br><br>**ORDER GRANTING MOTION FOR ATTORNEYS' FEES** |

Before the Court is Defendant Terry Greene's Motion for Attorneys' Fees (Dkt. 29) and Motion for Costs (Dkt. 29-3). The Court finds oral argument would not significantly aid its decision-making process and decides the motion on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons discussed, the Court grants Greene's motion in part and awards Greene attorneys' fees in the amount of $500.00 and $1,455.54 in costs.

## I.   BACKGROUND

The Court previously detailed the factual background of this case in *Johnson v. Greene*, No. 24-cv-00316, 2025 WL 2508381 (D. Idaho Sep. 2, 2025).

The parties filed cross-motions for summary judgment. This Court granted Greene's motion for summary judgment, holding that Johnson had not satisfied the elements of defamation per se nor met her burden of showing triable issues existed (Dkt. 27 at 10). Greene has now moved for attorneys' fees and costs (Dkt. 29; Dkt. 29-3), seeking an award of $24,548.50 in attorneys' fees and $3,478.32 in costs.

**ORDER GRANTING MOTION FOR ATTORNEYS' FEES - 1**

## II.    LEGAL STANDARD

### A.    Sanctions: Attorneys' Fees

Three primary sources of authority enable courts to sanction parties or their attorneys for improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court; (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings; and (3) the Court's inherent power. This case involves sanctions under the second and third source of authority.

Under § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Because § 1927 authorizes sanctions only for the multiplication of proceedings, "it applies only to unnecessary filings and tactics once a lawsuit has begun," not to initial pleadings. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996).

Assessment of these types of sanctions requires a court to make a finding of recklessness or bad faith. *See, e.g.*, *West Theatre Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1990); *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998). Bad faith is present whenever an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Estate of Blas ex rel. Chargualaf v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986) (citation modified). Thus, recklessness is the threshold required to impose sanctions under § 1927. *See Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001) (noting "recklessness suffices for § 1927"); *see also Zambrano v. City of Tustin*, 885 F.2d 1473, 1485 (9th Cir. 1989) (finding mere negligence is insufficient to levy sanctions). Imposing sanctions under § 1927 is an

"extraordinary remedy" that must be exercised with extreme caution. *See In re Keegan Mgmt. Co.*, 78 F.3d at 437.

The Court may also impose sanctions under its inherent power when a party acts in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). "[M]ere recklessness, without more, does not justify sanctions under a court's inherent power." *Fink*, 239 F.3d at 993–94. Rather, "sanctions are available if the court specifically finds bad faith or conduct tantamount to bad faith." *Id.* at 994. Bad faith conduct includes "willful disobedience of a court order" or "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980) (citation modified). Importantly, a finding of bad faith to justify an award of attorneys' fees "is not restricted to cases where the action is filed in bad faith"—it encompasses the actions that led to the lawsuit and the conduct of the litigation. *Id.*

**B.     Costs**

Under Rule 54(d)(1) of the Federal Rules of Civil Procedure and District of Idaho Local Civil Rule 54.2, the Court may award costs to the prevailing party. The term "costs" as used in Rule 54(d) is defined to include (1) fees of the clerk, (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case, (3) fees for printing and witnesses, and (4) fees for making copies of any materials obtained for use in the case. 28 U.S.C. § 1920. Under § 1920, "taxable costs are limited by statute and modest in scope." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012).

### III.     ANALYSIS

The merits of the underlying lawsuit are not at issue. Rather, the narrow question is whether Johnson may be sanctioned and whether Greene is entitled to costs.

A.     **Attorneys' Fees**

Greene offers two legal bases upon which the Court may impose sanctions against Johnson and authorize the requested award of attorneys' fees: (1) the Court's inherent power; and (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings (Dkt. 29); *see Fink*, 239 F.3d at 991.

1.     **Sanctions Under § 1927**

Greene argues that Johnson's conduct warrants attorneys' fees under § 1927 because both her claims and summary judgment motion were frivolous (Dkt. 29-1 at 2). Because the statute applies only to conduct once the lawsuit has been filed, the Court focuses only on Johnson's motion for summary judgment.[1]

Greene maintains that Johnson's summary judgment motion was frivolous because she filed it before deposing Greene and it did not include an analysis of the governing law (Dkt. 29-1 at 2). That Johnson's motion relied on conclusory assertions does not per se make it frivolous. Nor does the timing of the motion or her failure to "engage with [Greene's] substantive arguments once raised" make it unreasonable or vexatious. Furthermore, Greene has not pointed to any authority where conduct like Johnson's has been sufficient to constitute bad faith or harassment.

The Court also finds that Johnson's conduct in filing her summary judgment motion was not reckless or done in bad faith. There is no evidence that the motion was filed for the purpose of

---

[1]     As an initial matter, Johnson contends Greene is not entitled to attorneys' fees under § 1927 because she is not admitted to practice before the U.S. District Court for the District of Idaho (Dkt. 31 at 5). Johnson is mistaken. Section 1927 applies to "[a]ny attorney *or other person* admitted to conduct cases in any court of the United States," not just attorneys licensed to practice in that particular court. (emphasis added); *Wages v. IRS*, 915 F.2d 1230, 1235–36 (9th Cir. 1990) ("Section 1927 sanctions may be imposed upon a pro se plaintiff."). Accordingly, Johnson cannot escape § 1927's grasp merely because she is not licensed to practice in this Court.

harassing Greene, nor did Johnson multiply the proceedings in an unethical manner. Accordingly, the Court declines to impose sanctions on Johnson under § 1927.

### 2.       Sanctions Pursuant to the Court's Inherent Powers

Greene also asks the Court to impose sanctions under the Court's inherent power because Johnson's discovery conduct evidences bad faith and was done for the improper purpose of harassing Greene (Dkt. 29-1 at 5, 8). Specifically, Greene contends that Johnson's first set of Requests for Admission (RFAs) were filed solely to embarrass and harass him (*id.* at 6). He also argues Johnson committed discovery abuse in the form of "attritional discovery" (*id.* at 7).

First, the Court agrees that the identified RFAs served no legitimate purpose and were aimed at harassing Greene. In her first set of RFAs, Johnson demanded Greene admit that one of his sons molested another; his younger son was "incarcerated as a sex offender"; and Maggie referred to Greene as "Daddy-in-Law"[2] (Dkt. 29-1 at 6; Dkt. 29-2 at 12–13). Greene maintains that these requests "served no conceivable relevance to the narrow issues in this defamation action" and that "their sole function was humiliation" (Dkt. 29-1 at 6). Johnson responds that the RFAs "sought information relative to Mr. Greene's motive in aiding Maggie's divorce from Mr. Greene's own son," which she contends was necessary to understand the nature of Greene and Maggie's relationship (Dkt. 31 at 7). The Court disagrees.

The information Johnson sought was not relevant to whether Greene made a false and defamatory statement about her. Indeed, Johnson all but admits that the RFAs were aimed at prying into Greene's family and private life. Furthermore, the Court questions how Johnson came by the underlying information. As Greene aptly points out, the Maryland Rules of Professional Conduct

---

[2]       In his motion, Greene argues that the RFAs are damaging because they are humiliating and embarrassing to Greene and his family (Dkt. 29-1 at 7; Dkt. 32 at 7). To avoid exacerbating the situation, the Court does not set forth these statements here.

prohibit an attorney from disclosing or exploiting information relating to a former client's representation absent consent (Dkt. 29-1 at 6). As Johnson likely obtained this confidential information through her representation of Maggie, she was required to obtain Maggie's consent before disclosing it. Johnson, however, provides no explanation for her unethical conduct. Accordingly, the Court finds that Johnson acted in bad faith when she served Greene with the RFAs because her conduct was undertaken for an improper purpose to harass. *See In re Itel Sec. Litig. v. Itel*, 791 F.2d 672, 675 (9th Cir. 1986) (noting sanctions are justified when a party acts for an improper purpose—even if the act consists of making a truthful statement or a non-frivolous argument). Therefore, Greene is entitled to sanctions in the form of reasonable attorneys' fees associated with responding to these RFAs.

When a court uses its inherent authority to award a sanction in the form of attorneys' fees, legal fees awarded "must be compensatory rather than punitive." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017). Additionally, there must be a causal connection between the sanctioned conduct and the fees awarded. *Id.* at 108–09. The Supreme Court has emphasized, however, that in determining the sum total of fees, courts "need not, and indeed should not, become green-eyeshade accountants." *Id.* at 110 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Rather, "'[t]he essential goal' in shifting fees is 'to do rough justice, not to achieve auditing perfection.'" *Id.* at 110 (quoting *Fox*, 563 U.S. at 838).

Here, defense counsel spent approximately 7.3 hours of work on Johnson's first set of RFAs (Dkt. 29-2 at 231–32). Johnson does not object to counsel's hourly rate—$175.00 for partner Robby Perucca and $150.00 for associate attorney John Maas, V (Dkt. 29-2 ⁋ 11). In total, counsel billed approximately $1,127.50 of work on the first set of RFAs (*id.* at 231–32). Although the Court finds that only four of the forty RFAs were brought in bad faith, the Court exercises its

discretion and finds "rough justice" would be served by limiting Greene's request to $500.00 of the billed fees.

Greene also argues sanctions should be imposed because Johnson piecemealed her discovery in a "scattershot, attritional approach to discovery" (Dkt. 29-1 at 7). Between September and December 2024, Johnson served individual and standalone discovery requests, which Greene maintains forced him "into a near-constant cycle of responses" (*id.*). Johnson responds that her "discovery requests do not constitute multiple filings designed to vex the case" (Dkt. 31 at 7). While the Court understands defense counsels' frustrations, it does not find Johnson's "piecemeal" discovery requests were done in bad faith. If anything, they reflect a litigant who appears to have approached discovery in an unstructured and reactive manner, serving requests incrementally as issues occurred to her rather than through a coordinated discovery strategy. Accordingly, the Court declines to exercise its inherent powers to sanction Johnson for this conduct.

## B.    Costs Under § 1920

Greene also seeks $3,478.32 in costs on the basis that it is the prevailing party in this matter on all claims (Dkt. 29-4 at 1). Specifically, Greene seeks $2,105.54 in costs related to Johnson's deposition transcript and video recording and $1,372.78 for reimbursement for travel expenses and conference room accommodations (*id.* at 5, 7). Johnson argues that certain costs incurred by Greene were unnecessary.

First, Johnson contends the costs for the written deposition transcript of her deposition and the video of the deposition are not appropriate costs because they were not necessarily obtained, as Greene took Johnson's deposition three months after he filed a cross-motion for summary judgment and thus did not use the deposition in connection with summary judgment or trial (Dkt. 31 at 4), citing *Garland v. City of Seattle*, 1 F. App'x 720 (9th Cir. 2001), in support. In *Garland*, the Ninth Circuit merely held that it is within the court's discretion to limit deposition

**ORDER GRANTING MOTION FOR ATTORNEYS' FEES - 7**

costs to those used in connection with a dispositive motion or trial. *Id.* at 721. It did not, however, limit a court's cost award to those actually used in the case. Rather, the Ninth Circuit has routinely held that recovery of deposition costs not used in a dispositive motion or at trial is within the district court's discretion. *Sea Coast Foods, Inc. v. Lu-Mar Lobster & Shrimp, Inc.*, 260 F.3d 1054, 1061 (9th Cir. 2001), *as amended* (Sep. 25, 2001); *Wash. State Dep't of Transp. v. Wash. Nat. Gas Co., Pacificorp*, 59 F.3d 793, 806 (9th Cir. 1995). Here, Greene explained that the deposition was taken near the close of discovery and was necessary because there was a chance that the Court's decision would not resolve the entire case, as Johnson had only moved for partial summary judgment (Dkt. 32 at 4–5). The Court agrees. Section 1920(2) allows for the cost of a deposition "necessarily obtained for use in the case" as a whole and "does not specifically require that the copied document be introduced into the record to be an allowable cost." *Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc.*, 920 F.2d 587, 588 (9th Cir. 1990). Thus, Greene is not limited to claiming only those costs for depositions submitted in support of its summary judgment briefing.

Although not objected to, the Court finds the $650 in costs related to videotaping Johnson's deposition are not recoverable. Greene contends the video deposition was necessarily obtained because it was "particularly challenging" to predict Johnson's conduct in a trial setting as an attorney proceeding pro se (Dkt. 29-4 at 4). He claims a video recording provided him with a "practical safeguard" in the event Johnson "attempted to evade questioning, argue with the examiner, or otherwise disrupt the normal flow of examination at trial" (*id.*). A witness's demeanor and credibility, however, is important for nearly every witness. Accordingly, that alone does not justify taxing the cost of the videography service here. As Greene has failed to adequately explain why the video recording of Johnson's deposition was necessary, the Court declines to award such

ORDER GRANTING MOTION FOR ATTORNEYS' FEES - 8

costs. Therefore, the Court awards Greene the $1,455.54 in costs sought for Johnson's deposition transcript.

Johnson also challenges that costs for travel are covered under § 1920 (Dkt. 31 at 3). The Court agrees these costs are not recoverable. Courts within the Ninth Circuit have routinely rejected requests for costs for attorney travel on the basis that such is not permitted under § 1920. *See, e.g.*, *United States ex rel. Mountain Utilities, Inc. v. Fidelity & Deposit Co. of Md.*, No. 19-cv-00293, 2022 WL 17162858, at *2 (D. Idaho Nov. 22, 2022); *Gessele v. Jack in the Box, Inc.*, No. 14-CV-01092, 2024 WL 1619425, at *30 (D. Or. Apr. 14, 2024). Greene concedes as much, acknowledging that § 1920 does not expressly provide for reimbursement for attorney travel expenses (Dkt. 29-4 at 5). He argues, however, that this Court should permit recovery because "extraordinary circumstances" exist (*id.*). While some courts outside the Ninth Circuit have permitted recovery for attorney travel upon a showing of extraordinary or compelling circumstances, *see George R. Hall, Inc. v. Superior Trucking Co.*, 532 F. Supp. 985, 995 (N.D. Ga. 1982); *Miller v. Kenworth of Dothan*, Inc., 117 F. Supp. 2d 1247, 1265 (M.D. Ala. 2000), the Court is not persuaded that such circumstances exist here. Defense counsel claims that because Johnson resided over 2,000 miles from their office in Idaho and was unable to travel to Idaho as it presented a "hardship" for her, counsel was forced to travel to Maryland and "incur substantial travel expenses." Although the Court understands Greene's preference for an in-person deposition, counsel could have reduced its expenses by conducting the deposition remotely. That it made a strategic decision to take the deposition in Maryland is not an extraordinary reason to award attorney travel costs. Accordingly, Greene is not entitled to costs for its travel expenses or the cost of the conference room for hosting the deposition.

ORDER GRANTING MOTION FOR ATTORNEYS' FEES - 9

## IV.    ORDER

1.       Defendant Terry Greene's Motion for Attorneys' Fees (Dkt. 29) is **GRANTED IN PART**. The Court awards Defendant $500.00 in attorneys' fees and $1,455.54 in costs.

DATED: June 01, 2026

Amanda K. Brailsford
U.S. District Court Judge

**ORDER GRANTING MOTION FOR ATTORNEYS' FEES - 10**